IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Darla Kaye Wynne, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C/A No. 0:01-3409-22 |
| v. ) | |
| ) | |
| Town of Great Falls; ) | **OPINION AND ORDER** |
| Henry Clayton Stames, Mayor; ) | **AWARDING FEES, COSTS AND EXPENSES** |
| Henry Stevenson, Councilman; ) | |
| Barbara Hilton, Councilman; and ) | |
| Raymond H. Baker, Councilman,[1] ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Plaintiff's Second Amended Motion for an Award of Costs and Fees. Dkt No. 80 (filed July 8, 2005). Defendants challenge the amount of the requested fee award on various grounds but do not challenge Plaintiff's entitlement, as prevailing party, to recover reasonable fees. Defendants, likewise, do not challenge the amount of costs pursued. For the reasons set forth below, the court finds that Plaintiff is entitled to an award of costs and expenses in the amount of $1,791.91 and fees in the amount of $53,082.50 with fees and costs to be assessed jointly against all Defendants in their official capacity only.

**PROCEDURAL HISTORY**

Plaintiff, proceeding *pro se*, filed this civil rights action on August 20, 2001, challenging the Town of Great Falls' ("Town's") practice of beginning town council meetings with a sectarian prayer. She sought only injunctive relief. In March 2002, after a period of discovery during which several

---

[1] This caption reflects the dismissal of Defendant Joe V. Pendergrass, Councilman, who was dismissed by oral ruling at the time of the bench trial on July 11, 2003.

procedural motions were filed and resolved, Defendants moved for summary judgment. Briefing on this motion continued through the summer of 2002.

In January 2003, the Magistrate Judge assigned to handle pretrial proceedings recommended this court deny Defendants' motion for summary judgment. Dkt No. 34 (Report and Recommendation entered January 28, 2003). This court adopted the Magistrate Judge's recommendation over Defendants' objection. Dkt No. 36 (Order entered February 11, 2003).

A pretrial conference was scheduled for April 16, 2003. Although Plaintiff appeared *pro se* at that conference, she was accompanied by Herbert E. Buhl, III, Esquire, who indicated he was considering undertaking Plaintiff's representation for purposes of trial. *See* Dkt No. 38. Buhl filed his notice of appearance on July 3, 2003. Dkt No. 47. In the interim, Defendant filed a motion for jury trial which Plaintiff, still proceeding *pro se*, successfully opposed based, in part, on her continued pursuit of solely equitable relief. *See* Dkt No. 43 (May 19, 2003 order denying motion for jury trial and setting a bench trial for July 11, 2003).

The bench trial was conducted on July 11, 2003, as scheduled, with Buhl appearing on Plaintiff's behalf. After the trial, Plaintiff submitted two post-trial affidavits. Dkt No. 49 & 51. Plaintiff also submitted proposed Findings of Fact and Conclusions of Law on July 25, 2003, as well as a motion for new trial and memorandum in opposition to Defendant's motion to strike Plaintiff's post-trial submissions. Dkt Nos. 50, 54 & 55.

The court found in favor of Plaintiff on the merits in its order entered August 21, 2003, and awarded the requested injunctive relief. Defendants thereafter promptly filed a notice of appeal. *See* Dkt No. 59 (August 25, 2003).

Plaintiff's first motion for attorney's fees and costs was filed August 26, 2003. Dkt No. 61. In that motion, Plaintiff sought attorney's fees in the amount of $12,937.50 for 57.5 hours expended at the rate of $225 per hour. Plaintiff also sought recovery of costs and expenses in the amount of $520. In her supporting memorandum, Plaintiff noted that her counsel had been awarded fees at the rate of $225 in a June 2000 voting rights case. Plaintiff also directed the court to a variety of attorney fee decisions in which judges within this district had approved rates as high as $250 to $300 per hour.[2] In an accompanying affidavit, Plaintiff's counsel indicated his "normal rate for work performed in the U.S. District Court is now between $165.00 and $225.00 per hour" but that he understood "attorneys in South Carolina with similar experience charge between $165.00 and $275.00 per hour for work performed in the United States District Court for the District of South Carolina." Dkt No. 63.

On September 10, 2003, Defendants filed an opposition to the motion for fees, costs and expenses, arguing that both the rate and hours sought were excessive. Dkt No. 68. Defendants also argued that the motion was premature and, by separate motion, sought to stay resolution of the attorney's fee issue pending resolution of the appeal. Dkt No. 67. This court granted the motion to stay by order entered October 21, 2003.

On July 26, 2004, the Fourth Circuit Court of Appeals issued a decision affirming the judgment in favor of Plaintiff. *See Wynne v. Town of Great Falls,* 376 F.3d 292 (4th Cir. 2004). Defendants, however, sought reconsideration of that order through a petition for rehearing and

---

[2] The cases were decided over the preceding decade. Some but not all involved relatively similar civil rights litigation.

3

rehearing *en banc*. Plaintiff then sought, and this court granted, leave to withdraw her earlier motion for attorney's fees to permit an amended motion upon conclusion of the appeal. Dkt No. 73.

The Fourth Circuit denied the petition for rehearing by order entered November 1, 2004. Promptly thereafter, Plaintiff filed her amended motion for fees and costs. Dkt No. 75. The fees requested in this motion totaled $37,505.25 for 166.69 hours at a rate of $225 per hour. *Id.* Plaintiff also sought recovery of $990.02 in costs.

Defendants again sought to defer resolution of the attorney's fee issue by motion filed November 19, 2004. Dkt No. 78 (alternatively requesting additional time to respond to the motion for fees). This motion was based on a planned petition for writ of certiorari to the United States Supreme Court. *Id.* The motion to stay was granted by order entered November 23, 2004. Dkt No. 79. Defendants did not, therefore, file a response to this motion.

The United States Supreme Court denied Defendants' petition for certiorari on June 28, 2005. *See Town of Great Falls v. Wynne,* 125 S.Ct. 2990 (2005). Plaintiff thereafter filed the present motion seeking recovery for the hours requested in the earlier motions as well as for an additional 45.64 hours spent opposing Defendants' petition for certiorari. Plaintiff also seeks to increase the rate applied to all hours to $300 per hour.[3] Plaintiff's cost request has also increased to $1,791.91. Thus, Plaintiff now seeks a total recovery of $65,490.01 for attorney's fees, costs and expenses.

---

[3] In support of this increase, Plaintiff directs the court to an August 10, 2004 order approving a class action settlement within this district in which another judge approved a total fee of $500,000 based, in part, on his finding that rates of from $225 to $400 per hour would be reasonable rates for the South Carolina attorneys whose work was at issue.

4

Defendants' oppose Plaintiff's second amended motion for attorney's fees, raising three arguments. First, Defendants argue that both the originally and currently sought hourly rates ($225 and $300 respectively ) are excessive. Second, Defendants argue that the hours expended are excessive. Finally, Defendants argue that any award should be against the Town alone.

Plaintiff filed a reply in support of her motion for attorney's fees on August 19, 2005. The parties' briefing was complete upon this submission. The court subsequently requested and received supplemental briefing from Defendant relating to the issue of whether the award of fees should be assessed against the individual Defendants as well as the Town.

**STANDARD**

In determining the reasonableness of a request for attorney's fees, a court should consider the following twelve factors:

> (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.

*Trimper v. City of Norfolk Va.,* 58 F.3d 68, 73 (4th Cir. 1995).[4]  In more recent cases, the courts restate the sixth factor as relating to counsel's expectations at the outset of the litigation. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *E.E.O.C. v. Service News Co.,* 898 F.2d 958 (4th Cir. 1990)).

---

[4] These factors are generally referred to as the *Johnson* factors as they were first enunciated in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). They were adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978).

While the court must consider all of the factors, they need not be applied in any strict manner as not all may affect the fee in a given case. *See Service News,* 898 F.2d at 965 (finding seven of the twelve factors did not affect the fee in that case, but remanding for further proceedings due to the district court's failure to explain the basis of its fee determination). These factors are considered both in determining the propriety of the rate requested and the reasonableness of the hours expended "which are then multiplied to determine the lodestar figure which will normally reflect a reasonable rate." *Id.* at 965 (citing *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir. 1986)). The resulting lodestar figure is strongly presumed to be the reasonable fee. *City of Burlington v. Dague,* 505 U.S. 557 (1992)(rejecting contingency fee enhancement under the fee shifting statutes there at issue: the Clean Water Act and the Solid Waste Disposal Act). *See also Trimper,* 58 F.3d at 74 (lodestar fee based on multiplication of reasonable rate by reasonable hours is presumed to be fully compensatory without producing a windfall).

## DISCUSSION

In the present case, Defendants concede Plaintiff is the prevailing party entitled to fees, costs and expenses. Defendants contest only the amount of fees based on specific challenges to the rate pursued and the time expended. They also argue that the award should be made solely against the town, not the individual Defendants. Defendants' specific challenges are addressed below.

### 1. Allowable Rate

In her August 26, 2003 (original) and November 8, 2004 (first amended) fee applications, Plaintiff sought recovery for her attorney's fees at the rate of $225 per hour. *See* Dkt No. 61& Dkt No. 75. In her second amended fee application, Plaintiff sought to increase the rate applied to all hours to $300 to account for the delay in payment. Dkt No. 80 (filed July 8, 2005).

Defendants argue that either rate is excessive on a variety grounds. Defendants first suggest that the fee is "excessive under the prevailing circumstances" because Plaintiff has no fee agreement with her attorney and because the attorney agreed to serve based on "his involvement with the American Civil Liberties Union (ACLU)." Dkt No. 83-1 at 2. Both arguments are contrary to long-decided law. *See Blum v. Stevenson*, 465 U.S. 886, 894-95 (1984) ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Alexander S. v. Boyd,* 929 F. Supp. 925, 932-35 (D.S.C. 1995) (discussing, in length, reasons fee should not be reduced based on *pro bono* participation of one law firm), *aff'd sub nom Burnside v. Boyd,* 89 F.3d 827 (4th Cir. 1996).

Defendants next argue that there is no justification for the increase in the claimed hourly rate. While the court may agree as to the amount of the increase requested, it is appropriate to allow an increase to current rates to account for a delay in receipt of fees.[5]

Defendants also present what is essentially an estoppel argument that Plaintiff should not be allowed to seek an increase to account for the delay in receipt because "Plaintiff was not precluded from proceeding with the two earlier petitions, from obtaining a judgment, and thereby obtaining post-judgment interest. The Plaintiff voluntarily agreed to withdraw her previous petitions for attorney's fees and thus she should be precluded from claiming any harm therefrom." *See* Dkt No. 83-1 at 2. This argument is without merit as it ignores the history of the proceedings which included

---

[5] Such a means of compensating for the delay in receipt of payment has been approved by various courts. *See, e.g., Daly,* 790 F.2d at 1081. The Fourth Circuit has fairly recently reaffirmed that attorneys' fee awards should take into account "the effect of delay of payment on the value of the fee" rather than simply awarding the "historic rate." *Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 180-81 (4th Cir. 2002).

two successful (unopposed) motions by Defendants to defer resolution of the motions and Plaintiff's voluntary withdrawal of the motions with leave to refile *at the court's suggestion*.[6]

Finally, citing solely to the hourly rate of their retained counsel ($100), Defendants argue that Plaintiff's claimed rate is unreasonable. Defendants further posit that $150 per hour would be a more reasonable rate, without any support for the premise that this would be a reasonable rate for the type work at issue.

The rate paid Defendants' counsel provides little or no guidance, as it is an extraordinarily low rate for the geographic area and type law at issue. Further, this rate is presumably paid under a long-term "insurance defense" contract. No information is given as to the rates charged by associated counsel who is a member of another firm. Thus, the rate paid Defendants' retained counsel provides no guidance as to what rates are ordinary and reasonable for the work performed on Plaintiff's behalf.

The court must, therefore, look to the information provided by Plaintiff in determining a reasonable rate. In making this determination, this court finds the following *Johnson* factors to be the most relevant: "(3) the skill required to properly perform the legal services; . . . (5) the customary fee for such services; . . . (9) the experience, reputation, and ability of the attorney; . .. and (12) fee awards in similar cases. *Trimper,* 58 F.3d at 73.

This court begins its analysis by considering the rates normally charged by counsel. These rates are significant as they suggest the market's determination of at least the fifth (customary fee) and ninth (experience, reputation and ability of counsel) *Johnson* factors. They are, nonetheless, not

---

[6] Resolution of the first fee petition was stayed based on Defendants' unopposed motion. The second motion for fees was also stayed on Defendants' motion. When that motion had been pending for nearly a year, Plaintiff voluntarily withdrew the motion with leave to refile. This action was based on a teleconference with chambers staff relating to the court's preference not to have stayed motions pending for lengthy periods of time when they could be refiled without prejudice.

wholly determinative. *See Trimper,* 58 F.3d at 76 ("the proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question"); *Rum Creek Coal Sales v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (noting that relevant market normally is the district in which the court sits).

The only information provided regarding counsel's normally charged rates is found in Plaintiff's initial motion for fees filed in August 2003. This motion and accompanying information indicate that Plaintiff's counsel normally charged from $165 to $225 per hour for federal trial court work at that time. Plaintiff has also submitted unchallenged evidence that her attorney was awarded payment at the rate of $225 per hour in June 2000 in a Voting Rights case. Defendants have not challenged the veracity of these statements and the court finds no reason to doubt them.

Plaintiff has also submitted evidence that the above rate range ($165 to $225) falls on the low end of rates used for the award of attorneys' fees in this district in a variety of actions. Not all of these actions or the type work done are comparable to the present, although they do provide some guidance.

The issues raised in this action, while not necessarily as complex as those normally raised in a Voting Rights action, are in a fairly specialized field in which Plaintiff's attorney has extensive experience. This level of experience allowed him to undertake representation shortly before trial, to proceed directly into trial without delay, and to prepare substantial briefing for consideration by the court in short order thereafter. Further, the briefing required at the appellate level required a moderate level of skill. Each of these factors suggests a rate in the range of $225 to $275 would be reasonable during the relevant time frame for the type work completed by Plaintiff's attorney.

One factor suggests that the court should look to the lower end of this range. That factor is the stage of the proceedings at the time Plaintiff obtained counsel. At that point, Plaintiff had

successfully opposed summary judgment. Thus, there was a lower likelihood of an adverse outcome than might otherwise be anticipated at the outset of an action.

With all of the factors taken into consideration, the court concludes that $225 was a proper rate for the work at the time of the original fee application. The court further concludes that this rate should be adjusted upward to account for the lost value over time. In this regard, the court believes an adjustment to a present rate of $250 per hour is adequate. This represents slightly more than a ten percent increase over a two year period from the filing of the first fee application. The court, therefore, finds Plaintiff's counsel should be compensated at the rate of $250 per hour.

### 2. Reasonable hours

Plaintiff asserts that she is entitled to an award of fees for 166.69 hours for her attorney's work before this court and the Fourth Circuit Court of Appeals. She also seeks an award of fees for 45.64 hours of work opposing Defendants' petition for a writ of certiorari to the United States Supreme Court. Thus, Plaintiff seeks payment for a total of 212.33 hours.

While Defendants challenge the time spent as excessive, the court finds the hours requested to be quite reasonable. In reaching this conclusion the court has considered the following *Johnson* factors to be most relevant: "(1) the time and labor required to litigate the suit; [and] (2) the novelty and difficulty of the questions presented by the lawsuit . . ." As noted above, the case was not particularly complex from a legal or factual standpoint. Nonetheless, a fairly significant amount of briefing was required, much of that being at the appellate level. The time claimed for this work is not extensive and this court believes it to be reasonable.

In short, the court finds no basis for denying Plaintiff recovery for any of the hours requested. The court, therefore, finds that Plaintiff is entitled to recovery of attorney's fees for 212.33 hours of work.

10

### 3. Calculation of Attorney's Fee

Applying the rate of $250 to the 212.33 hours allowed, the court finds that Plaintiff is entitled to recover attorney's fees in the amount of $53,082.50. The court further finds this total award to be reasonable in light of Plaintiff's degree of success on the merits, importance of the issues involved, and general conduct of the relatively streamlined litigation.[7]

### 4. Costs and Expenses.

Plaintiff seeks recovery of $1,791.91 in costs and expenses. Defendants do not challenge this request in any respect. The court, therefore, finds that Plaintiff is entitled to recover costs and expenses in the amount of $1,791.91.

### 5. Responsible Parties.

Defendants suggest that any award should be made solely against the Town and not against the individual members of Town Council. Defendants argue that such a limitation is proper given that Plaintiff only sought injunctive relief which establishes that Plaintiff only sought and obtained recovery against members of Town Council in their official capacity as representatives of the Town.

Defendants are correct in asserting that the only relief sought was injunctive and that this necessarily means that Defendants were sued only in their official capacity as members of Town Council. *Scott v. Flowers,* 910 F.2d 201 (5th Cir. 1990) (explaining that award of fees in action for injunctive relief pursued against named employees of the state was, necessarily, an official capacity action, consequently, the fee award "must be paid by the state and cannot be assessed against the defendants *in their individual capacity*"– emphasis added). The court does not, however, find that

---

[7] It is of some note here that the fees would likely have been significantly higher had Plaintiff retained counsel at an earlier stage. Likewise, they would have been higher had Plaintiff not limited her request to equitable relief. Thus, Defendants have benefitted from Plaintiff's conservative approach to this litigation.

this requires that any award of fees be entered *solely* against the Town. *See, e.g., Council for Periodical Distribs. Assoc. v. Evans,* 827 F.2d 1483, 1486 (11th Cir. 1987) ("The case now before the court is not unlike the relatively common cases in which a government official responsible for enforcing an unconstitutional statute is liable for attorney's fees, even where the official took no active steps to enforce the statute.").[8]

The court will, however, clarify that entry of an award against individuals *in their official capacity* is, in effect, an award against the entity they serve. Thus, it is not an award for which the individual is personally liable. *See, e.g., Hutto v. Finney,* 437 U.S. 678 (1978) (finding it was not error to award fees against state entity which employed individual defendants sued in their official capacity even though entity was not named as a defendant as award against individuals in their official capacity was the same as an award against the state itself).

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff is entitled to recover fees in the amount of $53,082.50 and costs and expenses in the amount of $1,791.91 for a total of $54,874.41. Judgment in this amount shall be entered jointly against all Defendants not previously dismissed but, as to the individual Defendants, only in their official capacity.

IT IS SO ORDERED.

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 15, 2005

C:\temp\notesB0AA3C\01-3409 Wynne v. Great Falls atty fees.wpd

---

[8] While not necessary to the present decision, it is of some note that the particular policy at issue in the present action was supported and enforced by some, if not all, of the individually named Defendants.